UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
JOSEPH A. FERRARA, SR., FRANK H.
FINKEL, MARC HERBST, DENISE
RICHARDSON, ANTHONY D'AQUILA,
THOMAS F. CORBETT, THOMAS                    **MEMORANDUM OF**
GESUALDI, LOUIS BISIGNANO,                   **DECISION AND ORDER**
DOMINICK MARROCCO, and ANTHONY               11–CV–408 (ADS) (WDW)
PIROZZI, as Trustees and Fiduciaries of the
Local 282 Welfare Trust Fund, the Local 282
Pension Trust Fund, the Local 282 Annuity Trust
Fund, the Local 282 Job Training Trust Fund,
and the Local 282 Vacation and Sick Leave
Trust Fund,

                Plaintiffs,

        -against-

OAKFIELD LEASING INC., CORAL
INDUSTRIES INC., and MICHAEL N.
BABINO, JR.,

                Defendants.
---------------------------------------------------------X

**APPEARANCES:**

**Cohen, Weiss and Simon LLP**
*Attorneys for the Plaintiffs*
330 West 42nd Street
New York, New York 10036
    By:    Peter DeChiara, Esq.,
             Zachary N. Leeds, Esq., Of Counsel

**The Ziskin Law Firm, LLP**
*Attorneys for the Defendant Oakfield Leasing, Inc.*
6268 Jericho Turnpike, Suite 12A
Commack, NY 11725
    By:    Richard B. Ziskin, Esq., Of Counsel

**Dandeneau & Lott**
*Attorneys for the Defendants Coral Industries and Michael N. Babino, Jr.*
425 Broadhollow Road
Melville, NY 11747
    By:    Gerald V. Dandeneau, Esq., Of Counsel

**SPATT, District Judge**.

The Plaintiffs commenced this action on January 27, 2011, seeking to recover from the Defendants, jointly and severally, unpaid contributions owed to the Plaintiff Funds, pursuant to Sections 502(a)(3) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1132(a)(3) and 1145.

On November 9, 2012, the Court granted the motion by the Plaintiffs for summary judgment against the three Defendants Oakfield Leasing, Inc. ("Oakfield"), Coral Industries Inc. ("Coral") and Michael N. Babino Jr. ("Michael Jr.") as to liability. However, the Plaintiffs' request for damages was granted in part and denied in part. Specifically, the Court found that Oakfield, Coral, and Michael Jr. were jointly and severally liable for the delinquent contributions of Oakfield's and Coral's employees, and thus all three would be liable for contributions owed based on work performed by Oakfield's and Coral's drivers. However, the Plaintiffs did not provide a sufficient basis upon which to determine the delinquent contributions for Coral's employees. For this reason, the Court stated that the Plaintiffs would be entitled to damages from the Defendants jointly and severally in the amount of $598,016.60 in connection with Oakfield, but that the Plaintiffs could renew their request for damages with regard to Coral on or before December 7, 2012.

To further elaborate on this point with regard to damages, the Court had several major concerns regarding the amounts sought by the Plaintiffs in connection with the alleged delinquent contributions of Coral's employees. While as a matter of law, Coral and Oakfield may be treated as a single employer so that contributions may be owed for Coral's employees, the Plaintiffs did not originally specify the appropriate method to calculate the delinquent benefits of a non-signatory under this particular set of circumstances. Estimations are often

extrapolated from previous remittance reports sent to the Funds reflecting the number of hours worked by their employees in covered employment for which contributions are due for the period at issue, as they were in the present case for Oakfield. However, there are no remittance reports for Coral, as they are a non-signatory. Further, if there are no remittance reports, then under the CBA, the employer is deemed to have the number of employees that the Union reports in writing that the employer is employing, with each employee deemed to have worked 40 hours per week for the entire unreported period. (Cody Decl., ¶ 23.) Yet, it did not appear that the Plaintiffs followed this formula in calculating Coral's delinquent contributions, nor did they provide the reason for failing to do so. Moreover, it was also unclear at the time the Court considered the motion for summary judgment whether the invoices sent from Coral to third parties for trucking services performed by Coral employees would necessarily qualify as "covered" employment for which contributions would be owed.

In addition, in the Court's November 9, 2012 Order, the Plaintiffs were directed to file a proposed order for attorney's fees, reflecting the hourly rates set by the Court, on or before December 7, 2012. In particular, the Plaintiffs were ordered to recalculate their proposed rates as follows: $350 per hour for partners; $275 per hour for senior associates; $225 per hour for junior associates; and $90 per hour for paralegals and law clerks.

The Court will now assess whether the Plaintiffs have been able to provide legal and factual support for the contributions and other damages sought in connection with the non-signatory Coral.

The Plaintiffs continue to maintain that they should be entitled to damages stemming from the hours worked by Coral employees in the same amount as they requested in their initial summary judgment motion. However, unlike before, they now explain that a plaintiff need only

3

show a "stable foundation for the reasonable estimate" of damages, and that any burden of uncertainty as to the amount should fall on the wrongdoer. See Tractebel Energy Marketing, Inc. v. AEP Power Marketing, Inc., 487 F.3d 89 (2d Cir. 2007). Accordingly, they argue that because the Court has previously found that the Defendants are liable for unpaid contributions for the hours worked by Coral's drivers, they must owe some amount of damages in order to avoid allowing them to profit from their wrongdoing.

As set forth above, generally, the Trustees are able to determine the extent of unpaid contributions owed by an employer by auditing the employer's books and records. The Plaintiffs correctly point out that it was Coral's refusal to permit an audit that prevented the Trustees from determining with certainty the amount of unpaid contributions owed for Coral's employees. Further, under normal circumstances, if an employer refuses to submit to an audit, the Trustees may estimate damages under the estimation procedures provided in the Trust Agreement, typically by extrapolating from remittance reports submitted by the employer. However, once again, the Plaintiffs correctly point out that it was the Defendants' wrongful failure to submit remittance reports for Coral that prevented the Trustees from performing an estimated audit. This is the cause of any uncertainty as to damages. The Trustees now assert that the invoices that they relied upon provide a sufficient stable foundation for a reasonable estimate of damages. In addition, the Trustees have adequately explained why the invoices reflect work that would be deemed "covered" under the CBA and why they were unable to calculate the contributions based on the number of employees.

Accordingly, the Court agrees with the Plaintiffs and finds that they have now provided a sufficient legal and factual basis for the damages they seek from Coral. Specifically, the invoices that the Trustees' auditors used to calculate the amount of unpaid contributions owed

4

for the Coral drivers specified certain relevant information for each date of work, including the number of hours worked by the driver and the truck that each driver drove. The Defendants never challenged the authenticity or accuracy of the invoices and never challenged the calculation of the amount of unpaid contributions due for the Coral drivers. They challenged only whether they were liable at all. Therefore, the Court now awards the Plaintiffs the unpaid contributions for the hours worked by Coral drivers, in the amount requested in the Plaintiffs' summary judgment motion, namely $875,729.20.

The Plaintiffs have submitted a proposed order to the Court that awards the correct delinquent contributions for both companies, as well as the appropriate amount of attorney's fees and costs as set forth in the Court's previous Order. However, the Plaintiffs have failed to explain how they have arrived at their final proposed damages calculation, and the Court has two concerns that must be addressed.

First, the Plaintiffs originally calculated their interest through December 15, 2011, but have now calculated their interest through December 7, 2012. Thus, the Court understands that the originally submitted interest rates have been modified to include the additional per diem interest for the subsequent 358 days. For example, for the delinquent contributions of Oakfield, the interest as originally submitted was $78,600.14, with a per diem interest rate of $166.07. When this per diem interest rate is multiplied by 358 days, it is correct to add an additional amount of $59,453.06 to the calculated interest, for a total interest amount of $138,053.20.

However, the interest calculations for Coral's delinquent contributions for the time period of November 1, 2005 through June 30, 2006, Audit #12-0882, do not appear to the Court to be accurate. In the Court's view, the originally submitted interest amount of $99,347.47 would be subject to an additional amount of $17,506.20—the per diem interest of $48.90 per day for 358

5

days—for a total interest award of $116,853.67. Yet, the Plaintiffs have requested an interest award of $117,153.67, and have not explained this discrepancy.

Second, the Plaintiffs have requested per diem interest rates from December 7, 2012 through the entry of judgment as follows: $332.14 for Audit #10-0801-E1; $97.80 for Audit #12-0882; and $489.06 for Audit #12-874. However, the declaration submitted by the Plaintiffs with their summary judgment motion requested per diem interest rates that were precisely half of the above amounts: $166.07 for Audit #10-0801-E1; $48.90 for Audit #12-0882; and $244.53 for Audit #12-874. The Plaintiffs have failed to provide an explanation as to why they are now seeking double the amount of per diem interest.

Therefore, the Plaintiffs are directed to inform the Court by April 26, 2013 as to why there is a discrepancy in their requested interest amount for Audit #12-0882, as well as why they requested a doubled per diem interest rate.

**SO ORDERED.**

Dated: Central Islip, New York
March 23, 2013

                                                                        */s/ Arthur D. Spatt*
                                                                         ARTHUR D. SPATT
                                                                United States District Judge